HENRY T. LILLIENDAHL

*v.*

JULIUS A. STEGMAIR.

1. A suit in equity for an account, founded on a covenant in a sealed instrument, is not barred by a delay of more than six years from the last breach of the covenant.

2. It is no objection to such a suit that the complainant has a remedy at law upon the covenant.

3. The defendant being desirous to engage in a particular business, but being without the necessary capital, agreed with complainant that, if he would find him a person to furnish the requisite capital, he would start and carry on the business and secure the repayment of the capital by a chattel mortgage on the plant and account to complainant for two-fifths of the profits.—*Held*, without deciding that complainant became a partner, either as between the parties, or as to third persons, that the contract was not so hard an one that this court would refuse to enforce it.

On bill and demurrer.

*Mr. James Benny*, for the complainant.

*Messrs. Erwin & Keller*, for the defendant.

PITNEY, V. C.

Complainant, by his bill, asks for an accounting by the defendant under the following agreement:

Lilliendahl v. Stegmair.

"Agreement made and entered into this first day of November A. D. eighteen hundred and seventy nine, by and between Julius A. Stegmair of Jersey City, Hudson County, New Jersey, party of the first part, and Henry T. Lilliendahl of the same place, party of the second part, Witnesseth as follows:

"*First.*—The party of the first part is to take and occupy a drug store and carry on the drug business in the place selected by the parties hereto on Cottage Street at Bergen Point, New Jersey, or at such other place as may be agreed mutually upon, and to take charge of said store and devote his entire time and attention thereto, and he being unable to furnish the drugs &c. for said store it is agreed—

"*Second.*—That the party of the second part is to procure to be furnished capital to an amount not exceeding five hundred dollars, the same to be used solely for the purpose of putting in a stock of drugs and glass-ware in said store, as may be necessary and as far as practicable, and the amount of capital so furnished shall be secured by a chattel mortgage on said stock and all fixtures payable on demand.

"*Third.*—The business is to be carried on in the name of the party of the first part, and the lease of said store to be taken or to be in his name.

"*Fourth.*—Books of account shall be kept, where all transactions of said business shall be entered, to which either party shall at all times have free access.

"*Fifth.*—The rent of said drug store shall be Twelve Dollars a month for the first two years from November first 1879, and after the expiration of said two years to be seventeen dollars per month, clerk hire not to exceed $8 per month, and a Relief Clerk not to exceed $6 per month during winter and not to exceed $12 per month during summer.

"*Sixth.*—In consideration of the premises it is agreed between the parties hereto, that the profits of said business shall be divided as follows between said parties, that is to say, three-fifths to the said Stegmair and two-fifths to the said Lilliendahl, the amount so to be paid to the said Lilliendahl is in consideration of his procuring said capital to be furnished as aforesaid.

"*Seventh.*—This agreement to continue in force for the period of five years from and after November 1st, 1879.

"*Eighth.*—Monthly accounts and settlements shall be made between said parties, to-wit, on the first Monday of each and every month during the continuance hereof.

"Witness our hands and seals the day and year first above written.

"Julius A. Stegmair.　　[L. s.]
"Henry T. Lilliendahl.　　[L. s.]

"Signed, sealed and delivered in presence of

"Thomas Carey."

Complainant alleges that he performed the agreement on his part, immediately after its execution, by furnishing the requisite

capital to defendant, who at once rented a room, fitted it up for a drug store and carried on the contemplated business until January 18th, 1881, a period of over one year, when he discontinued it and made a sale of the stock to one Lucinda Lilliendahl in payment of a chattel mortgage on the same held by her; that defendant made large profits during the time he carried on the store and kept books of account showing those profits, which he has in his possession, and that he refused to permit the complainant to see or inspect them, and has never paid him any part of the profits, and he prays that he may be decreed to account and so forth.

It does not appear from the bill that the debt secured by the chattel mortgage, in payment of which the stock was conveyed to Miss Lilliendahl, was the debt created under the contract for capital to be furnished, or that any pressure was or could have been brought upon the defendant to make the same. So far as the bill shows, it was purely voluntary.

Several grounds of demurrer were assigned and relied upon at the argument, which I will consider in their order.

*First.* It was said that the cause of action arose, if at all, in January, 1881, more than six years before the filing of the bill, and that the bill corresponds to the ordinary common law actions of *assumpsit* or account, either of which would be barred by the statute of limitations. Hence, this court, acting by analogy to it, will not hear the complainant.

If the complainant's only remedy at law was one of the two actions just mentioned, the point would undoubtedly be well taken. No citation of authority is necessary in support of that position. But the agreement which forms the foundation of complainant's equity is under seal, and his remedy at law would, until the new rules were made, have been in covenant for not accounting, and whatever form it might assume under the new rules the action would not be barred at this time. Hence the analogy of the statute of limitations does not help the defendant.

The authorities on the point are few but clear. *McNair* v. *Ragland, 1 Dev. Eq. 537.* The bill there, as here, was by one partner against another for an account of partnership dealings

Lilliendahl v. Stegmair.

had under partnership articles under seal and dated in 1771. The dissolution was in 1774 and the bill was filed in 1800. The statute of North Carolina covered actions of account and on the case; and the bar fixed for such actions was three years. The court held the action not barred by analogy, and say (p. 539): "In our opinion this case is not within the statute at all, being between copartners touching their copartnership dealings, and constituting a trust appearing upon articles under seal. Whether it would be so if such were not the articles, we more than doubt. But where there is an agreement under seal to account, a bill for an account cannot be barred certainly before an action on the covenant would."

*Near* v. *Lowe, 49 Mich. 482.* There the bill was also by one partner against another for an accounting of partnership dealings under articles under seal, and the court said: "As the articles of partnership were under seal and contained covenants, the legal bar of six years can only arise in the action of *assumpsit*" &c.

These cases are precisely in point, and their reasoning is satisfactory.

The next reason urged in support of the demurrer was, that the complainant had a complete and adequate remedy at law by action on his covenant.

In answer to this point it is sufficient to say that the remedy in this court for an account, is concurrent with that at law; and the fact that the account is not to be taken between the parties, but is confined to an account of the profits of a business, does not make it an exception.

*Alpaugh* v. *Wood, 18 Stew. Eq. 153,* is precisely in point. At page 155 the chief-justice, speaking for the court of appeals, says: "It follows, therefore, that the account thus owing being refused, the respondent's right to the assistance of a court of equity in that respect is indisputable. Indeed, so clear was the existence of such a right, that the respondents were entitled to an account and a reference to a master on the mere face of the bill and answer."

The next ground taken was, that the contract is a hard one and such as this court will not lend its aid to enforce, being, if not actually usurious, yet open to the objection which lies to contracts tainted with usury. The contract is a peculiar one, and its proper construction in certain aspects not without diffi-culty. Its effect upon the standing and relations of the parties to each other and to those dealing with the defendant, was not discussed at the hearing. I do not think it necessary for present purposes to determine definitively whether or not under it the parties became partners as between themselves and as to third parties. My impression is that they did, and that complainant became liable not only to share the partnership losses, but for all partnership debts. *Sheridan* v. *Medara, 2 Stock. 469 ; Van Kuren* v. *Trenton Locomotive Company, 2 Beas. 302 ; Pooley* v. *Driver, L. R. (5 Ch. Div.) 458 ; Ex parte Delhasse, L. R. (7 Ch. Div.) 511 ; Badeley* v. *Consolidated Bank, L. R. (34 Ch. Div.) 536.*

It is enough, however, for present purposes, to say, that the complainant certainly ran a great risk of being treated as a part-ner, both as between the parties and as to third persons. Fur-ther, under the cases cited, were the capital really furnished by complainant through a trustee or by a third party upon his guarantee, it seems to me he ran great risk of having the chattel mortgage given to secure it declared void, as against a judgment creditor, as being contrary to public policy and a fraud upon the creditors. In every respect it seems to me that he ran risks in the enterprise which were quite commensurate with any gains he might derive from his share in the profits to be made under the contract.

Besides, it does not appear to me that, even if complainant ran no risk of being held liable as a partner, there was necessarily, upon the facts as they now appear, any hardship in the contract. Complainant did not take advantage of the present necessities of the defendant to obtain from him a lien upon property he already possessed, to secure a loan on money at exorbitant rates. The affair did not assume the shape of procuring from the de-fendant a right or share in anything already in his possession or

under his control. So far as the bill shows, the defendant had nothing, and furnished nothing towards the enterprise but his skill and services as a druggist. The undertaking was a new one, and the only capital invested in it, so far as appears, was the $500 procured by the complainant. So that the security must have been meagre at best, and the risk of the lender considerable to say the least. By the aid of the complainant, thus bestowed, defendant was enabled to engage in business, and got the opportunity to better himself, and actually made large gains, which presumably he would not have otherwise made. I see nothing immoral or contrary to public policy in a provision for compensation for the trouble and risk so taken by complainant.

It is entirely lawful for a party to pay another for becoming his surety, and certainly there can be no better mode of measuring the compensation in such a case, than by the degree of success of the enterprise set on foot by means of the suretyship so obtained.

Upon the case made by the bill, I do not think that the amount of compensation provided for to the complainant was exorbitant, or the contract a hard one. It was not usurious, because there was no agreement to pay any particular sum of money for the use of another sum. There might or might not have been profits, and under it the complainant might never have received any return. For the same reason it was not in contravention of the fifth section of the act concerning usury, (*Rev. p. 519*) (*a*), which regulates the compensation of money brokers.

I will advise a decree overruling the demurrer.

(*a*) Every solicitor, scrivener, broker, or driver of bargains, who shall directly or indirectly take or receive more than the rate or value of fifty cents for brocage or soliciting or procuring the loan or forbearance of one hundred dollars for a year, and so in proportion for a greater or less sum, or for a longer or shorter time, or above twenty-five cents for drawing, making or renewing the bond or bill for such loan or forbearance, or for any counter bond or bill concerning the same, shall, for every such offence, forfeit sixteen dollars, to be recovered by action of debt, with costs, by any person who shall sue for the same; the one moiety to the prosecutor and the other to the state.